for the extra time. Thank you. Alright, our third case this morning is Sugarloaf Fund versus the Commissioner of Internal Revenue. Your Honor. Mr. Rogers. Oh, the gentleman forgot his laptop. He forgot his laptop. Yeah, here he comes. Here he comes. Not much of an appellate lawyer, very often. Thank you. Thank you. Alright, Mr. Rogers, you may proceed. Good morning, Your Honor. I'm John Rogers. I represent Sugarloaf in this case. And there are a number of issues. Let me try to start with what I regard as the hardest and move down. The first position of the appellant is that penalties do not apply in this case. There's a statute, section 6751, which requires the Secretary of the Treasurer, the Commissioner, to follow certain procedures in assertion of penalties against taxpayers. And to the best of my knowledge, there's nothing in the record that says that the Commissioner did in fact follow those procedures. What about the stipulation? The stipulation I regard as being overridden by the statute because the statute says that no penalty shall be applied. Well, hold on though. Unless? But if parties to litigation waive a particular procedural requirement that's in a statute, isn't it highly unfair for one of the parties that entered into the stipulation to then after the fact say, now I'm going to hold you to the statute? I don't think so, Your Honor, because the statute is just absolute and I don't believe that the party to the case has the ability to waive that. I believe that's a non-waivable right. So the stipulation is just completely worthless? I believe so, yes, Your Honor. Why enter into it? Because none of the case law and acceptance of the statute had occurred at the time that that stipulation was being entered into. This is a recent development, started perhaps the end of 2017, in which the courts have been enforcing the mandatory requirement for assertion of penalties that the revenue agent initiate the penalty, that the penalty initiation be signed off by his immediate superior, and thirdly, that there be a statement in the record as to why the penalty has been asserted, or why it's appropriate to assert it. Now these items are elements of the case. So in other words, if you don't do that under section 6751, the way I read it, you're not entitled to assess a penalty. Well, parties can stipulate away elements to claims. Yes, but my position, Your Honor, is that this is a claim to which a party cannot stipulate it away. And what's the authority for that proposition, that this is non-waivable? The fact that the statute says no penalty shall be assessed. Well, that argument is then that no statutory requirement can be stipulated away, which is absurd. I don't think it's absurd in this case, Your Honor, because the commissioner has to come forward. The commissioner has the burden to come forward with penalties. And it's an essential part of his case in coming forward that these documentary requirements be met. And they weren't met in this case. Because you stipulated it away. No, that's only one little part of the penalty scope. That's section 6662A, which is the smallest part of the penalties. It goes to negligence. Section 6662H, on the other hand, is a 40% penalty, which goes to the value of the deduction claimed, which was disallowed. It's very much more serious and a lot different. So is your argument that the stipulation covered one but not both of the penalties? I'm not sure I know what you're saying. Yes, the only thing that was stipulated was section 6662A. So I'm saying that section 6662H was not stipulated and any other penalties that appear in the case. If I could move on to a different issue. You can use your time any way you'd like. Thank you, Your Honor. The second issue is that petitioner asserts that the tax court had no jurisdiction over the Rogers 2005 deficiency case. Because that was an individual case and one cannot consolidate a non-TEFRA case, a non-partnership case, with a partnership case under TEFRA. TEFRA jurisdiction is limited to partnership issues, not partner issues. Thirdly, Globex and Sugarloaf, not Globex, but Globex and Warwick and Jetstream Business Limited entered into a partnership called Sugarloaf on 1104. That partnership lasted through the end of 2007. Mr. Rogers, you seem to argue that what's really on my mind, I'll tell you, is superior trading. Yes, Your Honor. And so you seem to argue, if I understand your brief correctly, that this case is night and day different. It's altogether different. And the material distinguishing factor between the two cases is the presence of the trust structure here. Do I understand? Partly, Your Honor. Partly, Your Honor. I'm taking the position that superior trading is almost irrelevant. Because superior trading was one month of startup of the business at the end of 2003. This case deals with 2004 and 2005. But where superior trading is quite relevant, in my mind, is because it's an opinion of this court that evaluated a structure. And it upheld or it agreed with the determination that it was an abusive tax shelter. The only distinguishing factor that I can detect, or the most material one, if it is distinguishing, is that this time around there's a trust structure in place, whereas there was not before. You just had the partnership. Okay, Your Honor. We can deal with that. Is that? That is, in fact, an important distinction. Okay, and why is it important in your judgment? Because the 2004 statute, which undid the partnership structure, which was found in superior trading and found in the 2004 Sugar Lake case, did not address trust. It addressed corporations. It addressed partnerships. But it did not address trust. The law for ages was that if you buy an asset before you become a resident of the United States, your basis in that asset for tax purposes is the local currency price plus times the exchange rate so that everything is measured in dollars. And for whatever reason, Congress specifically decided not to make that statute applicable to trust. And Sugar Loaf's position is that the trusts were not shams. In the trust, the investor put money into a main trust bearing his name. Then Sugar Loaf put assets into that trust, namely distress receivables, the BOBEX. Mr. Rogers? Yes? Don't you have a profound conflict of interest in this case? Profound conflict of interest? Conflict of interest, representing the partnerships as well as your own interests, and if indeed these trusts were shams. There's a potential fraud at work here vis-à-vis your investors. And you stand before the court representing all of these parties with potentially conflicting interests. Well, I represent Sugar Loaf, and I represent the Rogers interest. Right, and my question is, is that ethical? And do you have waivers from the partnerships to undertake that dual representation? And aren't you conflicted as to your other investors? Because if you defrauded them— We went through extensive litigation with the other investors. I understand there's a lot of water under these bridges. Right. And you've done this a lot of times. And nobody has raised— I'm raising it now. Okay. I don't believe so, Your Honor. No, I mean, I considered that, and— You're surprised that the question suggests to me that you have not considered it. Well, I did consider it, and I didn't think— Did you obtain waivers? Um— Who are the other principals in the partnership? They were numerous investors, and those were in the sub-partnerships. And those, except for Gary Fierce, I don't believe there is one involved in this case. The tax and the penalties are determined at the partnership level, but the partners' financial interests are substantially implicated, are they not? Well, you're absolutely correct that the tax and penalties are determined at the partnership level. And it was made open to all interested parties that they could participate in this case, and nobody came forward. I'm talking about the propriety of your representation. Yeah, I don't—I just don't see the conflict, because everybody was represented by counsel. That would be you. No, no. Every investor in this transaction in Sugarloaf had his own lawyer. That was a requirement. At the tax court level? No, from the very beginning. In other words, nobody was accepted to consider for being an investor unless he had a lawyer. Who appeared for the taxpayer at the tax court level? We had—I did, and then I had an associate counsel, Paul Kozacki, who helped with the case, trying the case. But from anyone whom I represented, I got a waiver of conflict of interest so that I was conscious of the possibility of a conflict and made sure I got a waiver. And you could produce these waivers if the court asked for them? I could produce these waivers. Yes, Your Honor. Now, I couldn't get a waiver from folks who didn't want to have me involved in their affairs, and they had their own lawyers. Several people intervened. So, I mean, we're in a situation here where Sugarloaf had no money, and I volunteered to take on this responsibility and to do it correctly. And that incurred several rounds of ethics considerations, and nobody reached the issue before. Your time has expired. Thank you. Mr. Aloulis. Good morning, Your Honors. My name is Paul Aloulis from the United States Department of Justice Tax Division on behalf of the Commissioner on Internal Revenue. Do you have a view on the conflict of interest question? Your Honor, I do not have a view on the conflict of interest question, and I believe I may have some clarification speaking to that. That would be helpful. Thank you, Your Honor. This case involves multiple consolidated cases in the tax court. The Commissioner of Internal Revenue issued FPAA's Final Partnership Administrative Adjustments to Sugarloaf, which is the overarching partnership through which most of this transaction transpired, as well as multiple subpartnerships, which were the entities that were sold to Mr. Rogers' investors, through which the investors sought to realize the losses that were generated from the transfer of the Brazilian retailers' receivables. There were also notices of deficiency issued in respect of some of the trust transactions, which were issued, for example, to the Rogers and to a few other individual investors for those transactions. The tax court, all of those taxpayers challenged these various determinations by the Commissioner and filed their petitions in the tax court. The tax court consolidated all of those proceedings for these generalized purposes of determining the overarching propriety of the structure, as well as the taking of the Section 166 deductions ultimately by the U.S.-based taxpayers. At issue in this appeal is solely the determinations that were made with respect to the FPAA that was issued to Sugarloaf Fund itself. None of the other trusts or partnership proceedings that were consolidated in the tax court are in this appeal. It is only with respect to Sugarloaf. I'm aware of the scope of the appeal. I'm talking about the propriety of Mr. Rogers' representation of Sugarloaf. Your Honor, I'm not sure that it would be appropriate for me as government counsel to speak to the propriety of Mr. Rogers representing the entity versus also representing himself. It's not clear to me whether he obtained waivers from the other Sugarloaf partnerships. Is it a waivable conflict? If these are shams, there's fraud going on here vis-à-vis the investors, or at least potentially. I think that that is potentially correct, Your Honor, and that's why I actually have not thought about this issue. This is the first that I've thought of the issue. I didn't try these cases in the tax court. They came to me on appeal. But as I sit here listening to the court's questioning, I am trying to process in my mind, when the court speaks about the investors, these are individual U.S. taxpayers who purchased the lower-tier partnerships. And it is my understanding that in the tax court, they, in fact, did each have their own attorneys representing them in the proceedings that they initiated in tax court. So nothing that happens on this appeal regarding Sugarloaf's liability has any implications for those downstream investors? In fact, it does, Your Honor, yes. That's the concern that this raises? Because the items that are determined on Sugarloaf's tax return would create affected items in the lower-down tax returns. That's possible. Okay, all right, and that's enough time spent on that. So you may proceed. I apologize, Your Honor. I simply just haven't thought through all those issues. That's fine. I was trying to do it as the court was asking. Now, because the only thing that's at issue in this case is the Sugarloaf tax return adjustments, the point that Mr. Rogers made regarding the jurisdiction over the Rogers proceeding in the tax court, I think is also not properly a question that's present in this appeal. Whether the tax court was properly exercising jurisdiction over the Rogers' own personal dispute with the commissioner is not an issue in this appeal, which only concerns Sugarloaf's tax return. Mr. Lewis, the penalties here are meaningful, right? Yes, Your Honor. Because there's at least two of them that were imposed. Yes, Your Honor. Can you address the point that Mr. Rogers began with regarding the requisite approvals and whether UCM is jurisdictional and what impact, if any, the stipulation had? Your Honor, I think the stipulation is absolutely dispositive. In this case, the parties did not simply stipulate that the penalties should apply or simply stipulate that they will not argue about the penalties. What the stipulation said was the parties stipulate that the commissioner properly obtained approval for the penalties, and that is exactly what Mr. Rogers is now saying. Penalties, plural? Any and all? The commissioner properly obtained approval for the penalties under IRC section 6662A for 2004 and 2005. Now, today at oral argument, Mr. Rogers tried to assert that that did not pertain to the gross valuation misstatement penalty under 6662H. Right. That cannot be correct. Section 6662A is where the gross valuation misstatement penalty is applied. All that 6662H does is say, in certain circumstances, if the gross valuation misstatement is even larger, then that penalty is increased. So the penalty is imposed under 6662A, and the size of the penalty is determined under 6662H. And A is the source of the gross misstatement valuation penalty? Correct, Your Honor. Yes. And 6662H changes the threshold for whether it's a 20% penalty or a 40% penalty. So I would submit that 6662A is where the penalty arises, and certainly that stipulation is sufficient to say that the commissioner obtained proper approval for that penalty. Now, there's another issue here, which is the question whether the commissioner bore the burden of production with respect to the penalty approvals. And in this case, which is a partnership proceeding, the statute on which Mr. Rogers relies does not pertain. He relies primarily on Internal Revenue Code Section 7491C, which places the burden on the commissioner to come forward with respect to the liability of any individual for any penalty. This proceeding pertaining to Sugarloaf Fund, LLC, purported to be a partnership which received an FPA, is not a proceeding with respect to the liability of any individual for any penalty. It is a proceeding regarding the applicability of penalties at the partnership level. And so the statute on which Mr. Rogers relies to place the burden of production on the commissioner with respect to this penalty approval issue doesn't pertain in this proceeding. And so I think taking those two things apart, nothing improper happened here. The parties have stipulated that the commissioner had the necessary penalty approvals, and frankly, because Section 7491C doesn't apply in this proceeding, that stipulation doesn't even matter. If the court were even to say, agree with Mr. Rogers, that somehow because it doesn't explicitly state the enhancement under 6662H is also part of the stipulated issue, nevertheless, that would not be a basis for invalidating the tax court's upholding of the penalties here, because the commissioner didn't bear the burden in this proceeding of coming forward in the way that it would have in the case of an individual penalty application. At best, I would think that it would have been Sugarloaf's obligation to come forward and assert in the first instance that it believed that the approvals were not received. That didn't happen here until far too late in the process. And when it did, the parties stipulated the issue away. And so I think that that resolves that issue. Now, getting more to the substance, there was some colloquy between the court and Mr. Rogers regarding whether the change in the structure somehow differentiated this case from the superior trading case. And the answer to that question is absolutely not. In fact, again, because this case is focused on the Sugarloaf fund level transaction, what happened in the lower level entities doesn't really matter here. In the 2003 time period, which was the superior trading case, and in early 2004, the Brazilian receivables were purportedly passed through and transferred down to partnerships. In 2005, they were passed through and transferred down into trusts. Now, in both superior trading and in the tax court here, the courts invalidated the transactions at the Sugarloaf fund level. In superior trading, the entity there was known as Warwick. And this court found that that entity was not a valid partnership for virtually the same reasons that the tax court here found that Sugarloaf is not a valid partnership. And in the superior trading case, this court held that the Brazilian retailers in that case had not contributed their receivables as a partnership contribution into Warwick, but rather that they had sold those receivables. And that is exactly the same conclusion that the tax court drew in this case with respect to Sugarloaf. And so the issues that invalidated the structure in the superior trading case are the same issues that invalidate the structure here, whether or not the lower tier entities were partnerships or the lower tier entities were trusts. Those problems exist in this case just as they existed in superior trading. There is no way to distinguish this case from that case on those issues. And for those same reasons, this court should invalidate the transaction as it's presented in this case completely on all fours. So what you're saying there is the fact that the two cases have different mechanisms to distribute the losses to the holders of the partnership interest makes no difference at all when you don't have a bona fide partnership to begin with. Exactly, Your Honor. The transaction fails long before the interests are ever transferred down to the entities controlled by the U.S. taxpayers. And the court was very clear in the superior trading case that that's where it failed. I mean, it of course also fails at the lower level as well for very similar reasons. And the tax court discussed why, in this case in 2005, the trusts themselves were also shams. And even if the trusts weren't shams, when the Brazilian retailers' receivables were transferred from Sugarloaf down into the trusts, those transactions were not contributions of trust assets. They were sales or disguised sales of those receivables. And so they would fail at that level as well. But none of that is before the court today. The only questions are whether Sugarloaf itself was a valid partnership for federal income tax purposes. It wasn't. Or alternatively, if it was a valid partnership, whether these Brazilian retailers contributed assets for which the basis should be carried into the partnership or whether they sold those assets to Sugarloaf, in which case the basis should only be a cost basis. And as the tax court found here, there's no reason to conclude anything other than these Brazilian retailers were selling these distressed assets to Sugarloaf for purposes of allowing Sugarloaf to then transfer those assets to U.S. taxpayers to purchase them in order to take the embedded losses as phantom losses on their tax returns. And there's simply no reason, there's no evidence in the record to dispute that. There's no reason to call into question the tax court's legal conclusions or whether its factual conclusions were clearly erroneous. And for all those reasons, we submit that this court should affirm the tax court's decision. Thank you. Mr. Rogers, your time has expired. You have no time left. Thanks to both counsel. The case is taken under advisement.